UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                       )
APPALACHIAN VOICES, et al.,            )
                                       )
            Plaintiffs,                )
                                       )
       v.                              )  Civil Action No. 12-0523 (RBW)
                                       )
GINA MCCARTHY,                         )  Consolidated Case Nos. 12-0585 (RBW)
In her official capacity as Administrator, )                    12-0629 (RBW)
United States Environmental            )
Protection Agency,                     )
                                       )
            Defendant, and             )
                                       )
UTILITY SOLID WASTE                    )
ACTIVITIES GROUP, and                  )
                                       )
NATIONAL MINING ASSOCIATION,           )
                                       )
            Intervenor-Defendants.     )
_____ )

## MEMORANDUM OPINION

The plaintiffs in each of these consolidated cases, defendant Gina McCarthy, in her official capacity as Administrator of the United States Environmental Protection Agency ("EPA"), and intervenor-defendants Utility Solid Waste Activities Group and National Mining Association jointly request that this Court approve a proposed consent decree that would resolve the sole remaining issue in this litigation.  Joint Motion for Entry of Consent Decree ("Mot.") at 2–3.  After carefully considering the proposed consent decree, the Court finds that it is generally fair, adequate, reasonable, appropriate, and consistent with the public interest.  However, because the Court has concerns that the provision for extending the deadline for agency action may not be consistent with the public interest, it must deny the parties' motion at this time.

1

## I. BACKGROUND

The plaintiffs in these consolidated cases filed suit against the EPA alleging that the Agency has failed to timely review and, where necessary, revise certain regulations concerning coal ash[1] in accordance with the provisions of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901–6992k (2012). See Complaint for Declaratory and Injunctive Relief, No. 12-0523 ¶¶ 80–88; Complaint for Declaratory and Injunctive Relief, No. 12-0585 ¶¶ 20–22; Complaint for Declaratory and Injunctive Relief, No. 12-0629 ¶¶ 21–23. In an earlier memorandum opinion, this Court granted summary judgment to the plaintiffs on their claim that the EPA had failed to perform a nondiscretionary duty to review, and if necessary, revise its regulations concerning coal ash under Subtitle D of the RCRA at least every three years, but required supplemental briefing from the parties regarding an appropriate deadline for the EPA to comply with its statutory obligation. See Appalachian Voices v. McCarthy, __ F. Supp. 2d __, __, 2013 WL 5797633, at *13–15 (D.D.C. 2013).

The parties now move for entry of a consent decree which provides, in relevant part, that "[t]he EPA Administrator shall, by December 19, 2014, sign for publication in the Federal Register a notice taking final action regarding [the] EPA's proposed revision of [the] RCRA [S]ubtitle D regulations pertaining to [coal ash]." Mot., Attachment 1 (Proposed Consent Decree) ¶ 4. Pursuant to paragraph 16 of the proposed consent decree, that deadline "may be extended by written stipulation executed by counsel for all Plaintiffs and [the] EPA and filed with the Court." Id. ¶ 16.

---

[1] As in the Court's previous memorandum opinion in this case, the Court uses the term "coal ash" to refer collectively to fly ash waste, bottom ash waste, slag waste, and flue gas emission control waste generated primarily from the combustion of coal or other fossil fuels.

## II. ANALYSIS

"Approval of a settlement is a judicial act that is committed to the informed discretion of the trial court," United States v. District of Columbia, 933 F. Supp. 42, 47 (D.D.C. 1996) (citation omitted), and "[t]here is a strong policy favoring the voluntary settlement of civil matters," Envtl. Tech. Council v. Browner, No. 94-2346, 1995 WL 238328, at *2 (D.D.C. Mar. 8, 1995) (citing Citizens for a Better Env't v. Gorsuch, 718 F.2d 1117, 1126 (D.C. Cir. 1983)). In reviewing a proposed consent decree, a court "need only determine that the settlement is fair, adequate, reasonable and appropriate under the particular facts[,] and that there has been valid consent by the concerned parties." Citizens for a Better Env't, 718 F.2d at 1126 (citations omitted). This inquiry entails "determin[ing] whether the settlement is consistent with the statute that the consent judgment is attempting to enforce and . . . whether the agreement . . . resolves the controversy in a manner consistent with the public interest." Envtl. Tech. Council, 1995 WL 238328, at *2 (citing Citizens for a Better Env't, 718 F.2d at 1128). In making this determination, in the context of litigation involving the EPA, courts accord "broad deference . . . to EPA's expertise in determining an appropriate settlement and to the voluntary agreement of the parties in proposing the settlement." District of Columbia, 933 F. Supp. at 47.

**A. Is the Proposed Consent Decree Fair?**

A court must assure itself that a proposed consent decree is both procedurally and substantively fair. Id. at 48 (citation omitted). "A review of the fairness of a proposed consent decree requires an assessment of the good faith of the parties, the opinions of the counsel, and the possible risks involved in litigation if the settlement is not approved." Envtl. Def. v. Leavitt, 329 F. Supp. 2d 55, 70 (D.D.C. 2004) (citation and internal quotation marks omitted). A

substantively fair consent decree must also "incorporate[] concepts of corrective justice and accountability." Id. (citation and internal quotation marks omitted).

The Court is persuaded that the proposed consent decree is fair. All parties to this litigation represent that they believe the proposed decree "reflects an equitable resolution of the remaining issue in this litigation" and jointly request that the Court enter it. Mot. at 3. There has been no allegation of impropriety in its formation, and nothing in the agreement suggests an unfair or imbalanced negotiating process. Rather, the deadline set forth in the proposed decree demonstrates a compromise between the parties' differing views regarding an appropriate timeframe for the EPA to complete its review and any necessary revision of the regulations at issue. See Appalachian Voices, __ F. Supp. 2d at __, 2013 WL 5797633, at *14–15 (contrasting the plaintiffs' request that the Court require the EPA to complete its review and revision within six months with the EPA's request to defer setting a deadline for six months so that it could assess how much time it would require to complete its review and revision). Moreover, by establishing a deadline for the EPA's compliance with its obligation to review and, if necessary, revise its Subtitle D regulations pertaining to coal ash, the proposed consent decree resolves the sole remaining issue in this case without further litigation, and addresses the Court's concern about the inappropriateness of giving the EPA unbridled discretion to set its own schedule to perform the required review when one has already been set by Congress. See id. at *15.

**B. Is the Proposed Consent Decree Adequate, Reasonable, and Appropriate?**

This inquiry "focus[es] on the extent to which the decree is confined to the dispute between the parties and whether the decree adequately accomplishes its purported goal." Envtl. Def., 329 F. Supp. 2d at 71. Moreover, in making these assessments, a court must "not . . . impose its own judgments . . . [but] [r]ather, the court must determine whether the proposed

consent decree is reasonable from an objective point of view." Id. (citation and internal quotation marks omitted).

Viewing the terms of the proposed consent decree through the lens of the foregoing factors, the Court finds that they are adequate, reasonable, and appropriate. The scope of the proposed decree is limited to the sole remaining issue in this litigation—the time within which the EPA must complete its review and, if necessary, its revision of its Subtitle D regulations concerning coal ash—and resolves this dispute by setting a concrete deadline by which the EPA must take final action. The proposed decree neither enlarges the EPA's obligations under the RCRA nor limits its discretion regarding its chosen course of action. See Mot., Attachment 1 (Proposed Consent Decree) ¶ 18. As the Court has already discussed, the deadline chosen by the parties reflects a compromise between the parties' suggested schedules for compliance. And in view of the complexity of the EPA's task, the Court finds that requiring final action just over a year after the Court's entry of summary judgment is reasonable. See Envtl. Tech. Council, 1995 WL 238328, at *5–6 (finding proposed deadline for agency action reasonable given the technical nature of the rules in question and the extensive comments the EPA would likely receive and concluding that the slight delay in promulgating new regulations would not substantially prejudice the public since the regulations at issue had existed in their current state for fifteen years).

### C. Is the Proposed Consent Decree Consistent with the Public Interest?

While the Court finds the deadline set forth in the proposed consent decree consistent with the public interest, because the proposed decree would allow the EPA and the parties to this litigation to unilaterally extend the deadline for the EPA's final action, the Court cannot approve it in its current form. The proposed consent decree provides that the deadline set forth for the

EPA's final action "may be extended by written stipulation executed by counsel for all Plaintiffs and [the] EPA and filed with this Court." Mot., Attachment 1 (Proposed Consent Decree) ¶ 16. In effect, this provision allows the parties to agree amongst themselves to extend the date for final action without any limitations, and in particular, without the approval of the Court. When faced with a similar provision, another member of this Court concluded that "[a]bsent an impartial determination as to the reasonableness of any extensions of time, the public interest is left unprotected" because "the parties could arguably extend deadlines for any reason or for no reason at all." Envtl. Tech. Council, 1995 WL 238328, at *6–7. While the Court is not suggesting that the parties will not act in good faith in negotiating any extensions of the deadline, the public interest requires that the Court review any such requests considering that the EPA has already failed to abide by the statutorily mandated time requirement for completing its review and, if necessary, the revision of the regulations at issue here. See id. at *7. Accordingly, the Court cannot find that the proposed consent decree is consistent with the public interest as currently proposed.

### III. CONCLUSION

The Court finds that the proposed consent decree is fair, adequate, reasonable, appropriate, and generally consistent with the public interest. However, because the Court finds that the provision permitting the parties to extend the deadline for the EPA's completion of its review, and if necessary, revision of its Subtitle D regulations concerning coal ash without court approval is not consistent with the public interest, the Court cannot approve the proposed consent decree in its current form. The Court will instead allow the parties to submit a revised proposed consent decree that provides for court approval of any extensions of the EPA's deadline for final

action.  When the parties submit a proposed consent decree that addresses the concern discussed above, the Court will promptly approve it.

      **SO ORDERED** this 24th day of April, 2014.[2]

REGGIE B. WALTON<br>United States District Judge

---

[2] An order consistent with this memorandum opinion shall be issued contemporaneously.